

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELLEN MARTEN, as Guardian and Conservator of Glen Marten,<br><br>Plaintiff,<br><br>vs.<br><br>GENE HAIRE, STATE OF MONTANA, and DOES 1-10,<br><br>Defendants. | CV 17–31–H–CCL<br><br><br>ORDER |

Before the Court is Defendant State of Montana's "Motion to Quash Subpoena and for Protective Order" (Doc. No. 49) and Plaintiff's "Motion to Compel Discovery Pursuant to Fed. R. Civ. P. 37." (Doc. No. 54). The motions were argued on October 30, 2018. Natasha Prinzing Jones of Boone Karlberg P.C. argued for the State of Montana (the State). Sarah Clerget, Assistant Montana Attorney General, was also present. Plaintiff was represented by Terance Perry of Datsoupolis, McDonald & Lind, P.C. The Court has reviewed the parties' briefs and received argument and is prepared to rule.

## BACKGROUND

On September 20, 2018, Plaintiff sent a subpoena to counsel for the State of Montana. The subpoena was directed to "Keeper of the Records, Montana Department of Justice, Division of Criminal Investigation" and directed the deponent to appear on October 5, 2018, and produce the following documents:

1. A signed, certified copy of the Closure Report Number F1141208 ("Closure Report") including all attachments thereto, dated June 26, 2015 regrding Glen Marten and the Montana Developmental Center (MDC) in Boulder, Montana. The certification shall conform with Fed. R. Evid. 902 which states: . . .

2. Copies of all audio recordings of taped interviews taken by DOJ Investigator Spencer as outlined on pages 1 and 2 of the Closure Report.

3. A signed, certified copy of the Analysis and Finding for the Closure Report dated June 26, 2015.

(Doc. No. 50-1).

The State filed its motion on October 4, 2018, and the Court entered an order the next day staying the subpoena, expediting briefing, and setting a hearing for October 30, 2018. (Doc. No. 51). On October 17, 2018, Plaintiff filed a "Motion to Compel Discovery Pursuant to Fed. R. Civ. P. 37." Plaintiff's brief in

2

support of her October 17, 2018, motion is captioned "Memorandum in Support of Motion to Compel and in Opposition to Motion to Quash Subpoena and for Protective Order." (Doc. No. 55). Plaintiff seeks to compel the State to produce essentially the same materials requested in its subpoena – the "Closure Report, all attachments to it, all audio recordings referenced by it, recordings of any percipient witness and a signed copy of the Analysis and Finding dated June 26, 2015." (Doc. 54 at 6).

The State filed its reply on October 26, 2018, in accordance with the Court's expedited briefing schedule. (Doc. No. 57). The Court allowed Plaintiff's counsel to argue first at the hearing as Plaintiff had not had an opportunity to reply to the State's October 26, 2018, brief.[1]

## SUMMARY OF PARTIES' ARGUMENTS

### State of Montana

The State argues that the subpoena which was issued under Rule 45 of the Federal Rules of Civil Procedure should be quashed because Rule 45 governs

---

[1] On October 31, 2018, the State filed its response to Plaintiff's motion to compel, incorporating the argument from its October 26, 2018, reply brief. (Doc. No. 59).

3

discovery of non-parties and should not be used to circumvent the rules that apply to discovery between parties – specifically Rule 34. The State acknowledges that there is conflicting authority amongst district courts as to whether a Rule 45 subpoena may ever be served on a non-party, and that no federal court of appeals has directly addressed this issue. The State asks the court to follow the reasoning of a district judge in Nevada who recently addressed this issue:

> If a party has served discovery requests on the opposing party to which the latter has objected, then the requesting party should (1) attempt to resolve the discovery dispute through the meet and confer process required by Rule 37(a)(1) and Local Rule 26-7(c), and if that is unsuccessful, (2) timely file a motion to compel production of the requested documents or information. In general, it is not proper to avoid the opposing party's objections by requesting the same documents or information through another discovery device. It would be improper, for example, to serve duplicate requests for production of documents to which the opposing party has already objected, thereby forcing the party to once again object. Likewise, it is not proper to serve a subpoena duces tecum on the opposing party to produce documents that it has already objected to producing in its response to requests for production. Although most courts hold that a subpoena duces tecum may be served on another party, it cannot be used to circumvent Rule 34 or the other discovery rules.

4

*McCall v. State Farm Mut. Auto. Ins. Co.*, 2017 U.S. Dist. LEXIS 117250, at * 16 - 17 (D. Nev. July 26, 2017)(internal citations omitted). The State argues that Plaintiff is doing exactly what the Nevada District Court warned against – serving a subpoena duces tecum on the opposing party seeking production of documents that the opposing party has already objected to producing, rather than attempting to resolve the discovery dispute through the meet and confer process or by filing a motion to compel.

The State also seeks a protective order, arguing that the Closure Report and related materials are part of the State's internal quality assurance process and therefore protected from discovery by Mont. Code Ann. § 50-16-205. While acknowledging that the issue before the Court is the discoverability of the Closure Report, the State also points out that the Closure Report is not admissible because it is hearsay, is comprised of double hearsay statements, and the "report's summary and analysis of these hearsay statements invades the province of the jury because it prematurely directs the jury to apply the facts to the law in order to reach a certain result." (Doc. No. 50 at 14 - 15).

5

The State argues that the Montana Department of Justice's Closure Report and the interviews conducted in connection with that report constitute "data" as defined by Mont. Code § 50-16-201. This argument is based on the 2013 amendment to Mont. Code Ann. § 53-20-163. The State points out that when the Montana legislature amended the statute in 2013, it charged the Montana Department of Justice with investigating reports of mistreatment, neglect or abuse of any MDC resident. The State contends that by doing so, the Montana legislature effectively made the Montana Department of Justice MDC's quality assurance committee for purposes of Mont. Code Ann. § 50-16-205.

### Plaintiff Ellen Marten

Plaintiff responds that the subpoena to testify and bring records issued to the "Keeper of the Records for the Montana Department of Justice, Division of Criminal Investigation" was not an attempt to circumvent Rule 34 because it was not issued after the close of discovery. Plaintiff also argues that the subpoena was necessary because when a paralegal for Plaintiff's counsel called the Montana Department of Justice to request a certified copy of the Closure Report, the paralegal was told that the Closure Report could not be released without a

6

subpoena. Plaintiff cites a case in which Magistrate Judge Lynch rejected a defendant's argument that the plaintiff "was obligated to make his production requests under Fed. R. Civ. P. 34, not Rule 45." *Arseneau v. Allstate Ins. Co.*, CV 9-1117-M-JCL (D. Mont. Sept. 23, 2010). Judge Lynch noted that "the text of Rule 45 does not expressly prohibit the use, and service, of a Rule 45 subpoena duces tecum on a party to the action." *Id*.

Plaintiff argues that Mont. Code Ann. § 50-16-205 does not apply because the statute "protects 'data' of a 'health care facility' from discovery" and the Montana Department of Justice is not a health care facility. (Doc. 55 at 8). Plaintiff argues that the Closure Report is the result of a criminal investigation undertaken by the Montana Department of Justice as the result of a complaint filed on Glen Marten's behalf by Disability Rights Montana and therefore does not qualify as "data" as that term is defined by Mont. Code Ann. § 60-16-201(1). (Doc. 55 at 8). Plaintiff also argues that Mont. Code Ann. § 50-16-205 would be unconstitutional if applied to Marten's case, citing Justice Trieweiler's dissent in *Huether v. District Court*, 4 P.3d 1193 (Mont. 2000). (Doc. 55 at 13).

When questioned during oral argument as to where he had received the Closure Report, Plaintiff's counsel stated that he received the report in late spring

7

or early summer of 2015 from Disciplinary Rights Montana, which provided the confidential report to his client. When asked why Plaintiff needed a certified copy of a report already in her possession, Plaintiff's counsel stated that certification was necessary for admission of the report as a self-authenticating public document, under Fed. R. Evid. 902. Although Plaintiff argues that the admissibility of the Closure Report is not relevant to the discovery issue, she also contends that the Report is admissible as a statement of the opposing party under Fed. R. Evid. 801(d)(2).

## DISCUSSION AND ANALYSIS

### Motion to Quash Subpoena

There may be cases where a Rule 45 subpoena is an appropriate discovery tool when addressed to a party; however, this is not such a case. Plaintiff has been aware that the State objects to both the discoverability and admissibility of the Closure Report since the State served its "Responses to Plaintiff's First Discovery Requests" in April of 2018 (Doc. No. 50-2) and has known that the State did not plan to produce the audio files of the interviews conducted during the Montana Department of Justice investigation since the State served its supplemental privilege log in May of 2018. (Doc. No. 50-3).

8

During the October 30, 2018, oral argument on the pending discovery motions, the State's counsel stated that Plaintiff's counsel had taken nine depositions and was scheduled to take a tenth on the Monday following the hearing. Later in the hearing, Plaintiff's counsel stated that he had taken the depositions of witnesses whose statements were taken by Montana Department of Justice investigators without benefit of the audio recordings of those statements because the "obstructionist conduct" of the State had prevented him from obtaining the recordings.[2]

There is no indication in the record that Plaintiff attempted to engage in the meet and confer process to resolve this discovery dispute, as required by Fed. R. Civ. P. 37(a)(1) and L.R. 26.3(c), in the spring or summer of 2018. Nor did Plaintiff "notify the Court immediately by joint written status report of significant problems in the progress of discovery" as required in paragraph 6 of each scheduling order issued in this case. (Doc. Nos. 15, 23 and 39).

On August 22, 2018, the Court issued a second amended scheduling order, in response to a joint motion from the parties. (Doc. 39). That order extended the

---

[2] The Court is relying on its notes from the hearing, as no transcript is currently available.

discovery deadline until October 31, 2018, and extended the deadline for filing a joint status report regarding discovery until August 24, 2018. In their August 24, 2018, joint status report, the parties not only failed to mention any discovery dispute, they represented that they had "not encountered any significant problems with discovery aside from coordinating scheduled to accommodate multiple fact witness depositions." (Doc. No. 40).

Plaintiff's counsel waited until early fall to make any additional effort to obtain a certified copy of the Closure Report and the audio recordings referenced in the Closure Report and in the State's May 17, 2018, privilege log. Although Plaintiff served her subpoena on the State within the discovery period, Plaintiff also chose to wait until just before the close of discovery to schedule her depositions, and chose to conduct those depositions without benefit of the audio recordings. Although Plaintiff states that she "has in good faith attempted to confer with the State in an effort to obtain the DOJ report without action by this Court," (Doc. No. 55 at 15), Plaintiff has not certified her compliance with L.R. 26.3(c)(1) or described her efforts to comply, as required by L.R. 26.3(c)(2)(B).[3]

---

[3] The State similarly failed to certify that it had engaged in the meet and confer process before filing its motion to quash and motion for protective order.

10

Given the timing of Plaintiff's service of a Rule 45 subpoena, combined with Plaintiff's failure to bring this issue to the Court's attention sooner, it appears to the Court that Plaintiff was attempting to use a Rule 45 subpoena to subvert the meet and confer requirements of Fed. R. Civ. P. 37 and L.R. 26(c)(1). The Court has therefore determined that the subpoena should be quashed.

## Motion to Compel and For Protective Order

The parties appear to agree that the determinative issue as to their cross-motions to compel and for protective order is whether the Montana Department of Justice's investigation of a complaint by Disability Rights Montana concerning MDC's care of Glen Marten constitutes an internal investigation subject to the confidentiality provision of Mont. Code Ann. § 50-16-205. Both parties claim that the Montana Supreme Court's interpretation of the hospital peer review statutes codified at Title 50, Chapter 16, part 2 of the Montana Code in *Huether* supports their position. In *Huether*, the Montana Supreme Court held that "the net effect of the peer review statutes is that 'health care information' belongs both to the patient and to the hospital, while 'data' is a matter of internal administrative function." 4 P.3d at 1197. The Montana Supreme Court then concluded that "all 'health care information' either reviewed or generated by medical staff committees

11

should be made available to the subject patient. Only the 'data' are protected from disclosure." *Id.*

Plaintiff claims that she is entitled to a certified copy of the Closure Report because it contains medical information about her son and not "data" protected from disclosure, as that term is defined in Mont. Code Ann. § 50-16-201 because it was not prepared by a peer review committee. The State contends that when the Montana Legislature amended Mont. Code Ann. § 53-20-163 in 2013 and assigned the duty to investigate abuse and neglect at MDC to the Montana Department of Justice, the Montana Legislature made the Montana Department of Justice a "professional review committee" as that term is used in the peer review statutes found in Title 50, Chapter 16, part 2 of the Montana Code.

"Data" is defined as "written reports, notes, or records or oral reports or proceedings created by or at the request of a utilization review, peer review, medical ethics review, quality assurance, or quality improvement committee of a health care facility that my be shared with a medical practitioner, including the medical practitioner being reviewed, and that are used exclusively in connection with quality assessment or improvement activities, including the professional training, supervision, or discipline of a medical practitioner by a health care

facility. The term includes all subsequent evaluations and analysis of an untoward event, including any opinions or conclusions of a reviewer." Mont. Code Ann. § 50-16-201(1)(a) (2017).

If the State is correct about the effect of Mont. Code Ann. § 53-20-163, then both the Closure Report and the recordings of witness statements made during the Montana Department of Justice's investigation qualify as "data" and are protected from discovery by Mont. Code. Ann. § 50-16-205. More importantly, the report and the witness statements would not be admissible under Mont. Code. Ann. § 50-16-205 either at trial or in support of or opposition to summary judmgent.

Although neither party has cited a case from the Montana Supreme Court or any Montana district court construing the intersection of Mont. Code Ann. 53-20-163 with Mont. Code Ann. §§ 50-16-205, both parties declined the Court's suggestion that this issue should be certified to the Montana Supreme Court.

This Court applies Montana's rules of statutory construction when interpreting Montana statutes. *See In re: First T.D. & Investment, Inc.*, 253 F.3d 520, 527 (9th Cir. 2001)(applying California's rules of statutory construction when interpreting California statutes). The rules of statutory construction in Montana are provided in statute. "In the construction of a statute the office of the judge is

13

simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Mont. Code Ann. § 1-2-101 (2017). In other words, this Court looks first to the plain language of the statutes at issue and in a case such as this, where two statutes arguably overlap, construes them in a manner that gives effect to both.

Because the terms utilization review, peer review, medical ethics review, quality assurance, or quality improvement committee are not defined in Mont. Code Ann. § 50-16-201, this Court looks to other sections of the Montana Code when interpreting those terms. *See* Mont. Code Ann. §§ 1-2-106, 107. Those terms are used in another section of the Montana Code which provides that the "proceedings and records of professional utilization, peer review, medical ethics review, and professional standards review committees are not subject to discovery or introduction into evidence in any proceeding." Mont. Code Ann. § 37-2-201(2) (2017). This Court has found a case in which a Montana district court determined that the term "peer review" as used in Mont. Code Ann. § 37-2-201 *et seq.* "means a committee of the doctor's peers, not a professional lay investigator

hired by a hospital." *Cole v. St. James Healthcare*, Cause No. DV 07-44, 2007 Mont. Dist. LEXIS 675, ¶ 21 (2nd Jud. D. Ct. June 1, 2007), *aff'd on other grounds*, 199 P.3d 810 (Mont. 2008).

While this Court is not bound by the Montana District Court's dicta in *Cole*, the Court finds it persuasive. The Montana Department of Justice, like the professional lay investigator hired by St. James Healthcare, does not qualify as a peer review committee. Indeed, the Montana Department of Justice admits that its staff "does not have the medical expertise to determine whether the alleged suspects individually failed to provide necessary services." (Doc. 4-29, Closure Report, at 63).[4]

Although the Montana Legislature included a general confidentiality provision when it charged the Montana Department of Justice with the responsibility for investigating reports of abuse and neglect at MDC, it did not specifically incorporate the confidentiality provision of Mont. Code. Ann. § 50-16-205. *See* Mont. Code Ann. § 53-20-163(7) (2017). The results of an

---

[4] Although the Court is not deciding the admissibility of the information sought by Plaintiff at this point, it seems to the Court that Plaintiff's argument that the Montana Department of Justice does not qualify as a peer review committee may undercut her position that the Closure Report qualifies as an admission by a party.

15

investigation conducted by the Montana Department of Justice under Mont. Code Ann. § 53-20-163 does not constitute "data" protected from discovery by Mont. Code Ann. § 50-16-205 because the results of the investigation are not intended to be "used exclusively in connection with quality assessment or improvement activities, . . . ." Mont. Code Ann. § 50-16-201(1). "If in the course of conducting an investigation under [Mont. Code Ann. § 53-20-164] the department of justice develops reasonable cause to believe that a criminal offense has occurred, the department of justice shall refer the matter to the appropriate law enforcement agency." Mont. Code Ann. 53-20-163(9) (2017). There is no indication in the record that the Montana Department of Justice's investigation of MDC's alleged neglect of Glen Marten required referral for additional criminal investigation or prosecution. But the possibility of such referral exists, making it clear that the results of the investigation do not qualify as data and are not privileged.

## CONCLUSION & ORDER

Having determined that the information sought by Plaintiff is not privileged, the Court must consider the specifics of Plaintiff's motion to compel. Plaintiff asks the Court for an "Order compelling the Defendants to produce the Closure Report, all attachments to it, all audio recordings referenced by it, recordings of

any percipient witness and a signed copy of the Analysis and Finding dated June 26, 2015." (Doc. 54 at 6). There is no reason for the Court to order the State to produce documents Plaintiff has already obtained from another source. Plaintiff already has a copy of the 63-page Closure Report, including a signed copy of the Analysis and Finding dated June 26, 2015 on pages 62 and 63, and the 38 page timeline attached to the report. (Doc. No. 4-29). Therefore the Court will not order the State to produce another copy of those documents.

The State's May 17, 2018, privilege log identifies audio files of 36 interviews conducted by the Department of Justice during its investigation of MDC. Plaintiff is entitled to those audio files because the Court has determined that those interviews were not conducted as part of an internal peer review investigation and the claimed privilege does not apply.

Accordingly,

IT IS HEREBY ORDERED that the State of Montana's Motion to Quash Subpoena and for Protective Order (Doc. N. 49) is GRANTED in part and the "Subpoena to Testify at a Civil Action for the Keeper of the Records for the Department of Justice, Division of Criminal Investigation" served on the State by Plaintiff's counsel on September 20, 2018 is quashed. The State's motion for a

protective order "precluding Plaintiff's use of privileged information obtained outside the discovery process, and precluding any further discovery of the privileged information" is DENIED.

IT IS FURTHER ORDERED that Plaintiff's "Motion to Compel Discovery Pursuant to Fed. R. Civ. P. 37" (Doc. No. 54) is GRANTED in part and DENIED in part as follows: the State need not produce a certified copy of the Closure Report, the attachments thereto, or a signed copy of the Analysis and Findings dated June 26, 2015. The State shall produce the audio recordings referenced in the Closure Report and identified on the State's May 17, 2018, privilege log within seven (7) days of entry of this order.

Dated this 9th day of November, 2018.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE