FILED

APR 26 2019

Clerk, U.S. District Court
District Of Montana
Helena

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELLEN MARTEN, as Guardian and Conservator of Glen Marten,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA,<br><br>Defendant. | CV 17–31–H–CCL<br><br>OPINION<br>&<br>ORDER |

The Final Pretrial Conference in this case is set for Wednesday, May 8, 2019, and the parties are scheduled to lodge their proposed final pretrial order, trial briefs, and proposed jury instructions on Friday, April 26, 2019. Plaintiff Ellen Marten, as Guardian and Conservator for Glen Marten[1], has moved for summary judgment as to Count IV of its Complaint. The motion having been fully briefed and no party having requested oral argument, the Court is prepared to rule.

**LEGAL STANDARD**

Fed.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense—or the part of each claim or defense—on which summary

---

[1] References to Plaintiff in this opinion are to Ellen Marten. Glen Marten, the injured party, will be referred to as Marten.

judgment is sought." Summary judgment or adjudication is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assn.*, 809 F.2d 626, 630 (9th Cir.1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita*, 475 U.S. at 586, n. 11.

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. Fed.R.Civ.P. 56(a), (c). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences from the facts must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255.

The moving party, in supporting its burden of production, "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an

2

essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.,* 210 F.3d 1099, 1102 (9th Cir.2000). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire,* 210 F.3d at 1102. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248.

Once the moving party has met its initial burden, the burden shifts to the non-moving party to establish the existence of a general issue of material fact. *Matsushita,* 475 U.S. at 586 – 87. The non-moving party may not rely on the allegations or denials of its pleadings but must cite to facts in the record. Fed. R. Civ. P. 56(c)(1); *Matsushita,* 475 U.S. at 586, n. 11. Moreover, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir.2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.,* 840 F.2d

1409, 1418 (9th Cir.1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir.2003).

This Court, as a general rule, considers only admissible evidence when ruling on a motion for summary judgment. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). In determining admissibility at the summary judgment stage, however, the Court looks to the content of the proffered evidence and does not elevate form over substance. *Id.*

Plaintiff contends that the State cannot dispute the negligence allegations against it because the Montana Department of Justice ("the State's top law enforcement and legal agency") submitted a report (DOJ Report) which constitutes an admission of neglect by the State. (Doc. 68 at 10). The Court is familiar with the report, having previously determined that it does not constitute "data" protected from discovery by Mont. Code Ann. 50-16-205. (Doc. 61 at 16). Although the Court did not directly address the admissibility of the DOJ report in its November 9, 2018, order, Plaintiff was warned that her argument that the Montana Department of Justice does not qualify as a peer review committee undercut her position that the DOJ report qualifies as a party admission. (Doc. 61 at 16, n. 4).

The caption of Plaintiff's complaint names the Montana Department of Public Health and Human Services (DPHHS) and the State of Montana as separate defendants. (Doc. 4 at 1). In June of 2017, the parties stipulated to dismiss DPHHS, acknowledging that DPHHS was named as a component part of the State of Montana and that future filings would reflect the only State defendant as the State of Montana. (Doc. 16). The dismissal of DPHHS was consistent with Montana law, which provides that the State of Montana is the only proper defendant in tort claims brought against the State of Montana. *See* Mont. Code Ann. § 2-9-313.

The fact that the State is a single entity for purposes of the statutes governing tort claims against governmental entities does not mean that statements made by one executive branch agency qualify as admissions by another executive branch agency. This is particularly true in this case, in which the Montana Department of Justice was investigating the Montana Developmental Center, a DPHHS facility, in response to a report of possible abuse of a Montana Developmental Center resident. The investigator's goal was to determine whether any of the individuals involved in Marten's care should be referred for criminal prosecution. It is an unfortunate reality that one branch of government may need to investigate the conduct of other branches of the same government entity. While

such investigations may lead to the filing of administrative, civil or criminal charges, the investigator's report is not an admission by the individual or the entity being investigated.

Plaintiff argues that she is entitled to summary judgment because the undisputed facts demonstrate that Dr. Justad was negligent and that Dr. Justad was an agent for the State of Montana. Plaintiff claims that the State made a judicial admission as to Dr. Justad's negligence in its twenty-ninth affirmative defense, in which it states: "Pursuant to Mont. Code Ann. § 27-1-703(6)(f), Defendants assert that Plaintiff entered into a settlement agreement with former Defendants Jean Justad, M.D. and South Hills Internal Medicine Associates, PLLP ("South Hills), that Dr. Justad and/or South Hills are at fault for Plaintiff's claimed damages and should appear on the jury verdict form for purposes of apportioning fault." (Doc. 41 at 40 - 41).

"Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988). Plaintiff characterizes the statement above as a factual assertion made in a pleading. The State argues that the affirmative defense raised in its amended answer referenced above is an alternative legal theory, not a factual statement, and

6

that it is entitled under the federal rules to plead alternative and inconsistent claims and defenses.

The State's twenty-ninth affirmative defense as written is clearly inconsistent with its denials of each allegation of Plaintiff's complaint that alleges Dr. Justad violated her standard of care or was negligent. (*See e.g.* Doc. 41 at ¶¶ 128 - 140). Although the State arguably should have been more clear that its affirmative defense was intended to preserve its right to argue to the jury that should it find both Dr. Justad and the State negligent, it should apportion the blame between them, Plaintiff has not been prejudiced by the State's lack of clarity. Given that leave to amend can be given up to trial, the Court agrees with the State that the State's addition of the twenty-ninth affirmative defense does not constitute a judicial admission as to Dr. Justad's liability.

Plaintiff also relies on the expert report of Daniel J. Urbach, who has been board certified in internal medicine since 1992, to support her contention that Dr. Justad violated her standard of care. She argues that the State cannot refute Dr. Urbach's testimony because its expert witnesses are not internists and only an internist can testify as to the standard of care for an internist.

Plaintiff has also moved to exclude the testimony of the State's expert medical witnesses. (Doc. 65). The Court has reviewed the briefs and exhibits

filed in support of and opposition to Plaintiff's motion to exclude expert testimony in deciding Plaintiff's summary judgment motion. On Monday, April 22, 2019, Plaintiff filed a Notice of Supplemental Authority in connection with her motion *in limine*, notifying the Court of a recent memorandum opinion issued by the Montana Supreme Court. *Griffin v. Lewis*, 2019 MT 92N (Mont. 2019). The internal operating rules of the Montana Supreme Court prevent the citation of memorandum opinions. The Court has nevertheless reviewed *Griffin*, as it is the latest Montana case addressing Mont. Code Ann. § 26-2-601, the statute relied on by Plaintiff in both her motion *in limine* and her motion for summary judgment. The Court agrees with Plaintiff that it should look to state law when determining the competency of the experts in this case, given that the only issues remaining to be tried are state law issues. Fed. R. Evid. 601 ("But in a civil case, state law governs the witness's competency regarding the claim or defense, for which state law supplies the rules of decision."); *Liebsack v. United States*, 731 F.3d 850, 856 (9th Cir. 2013)(holding that Alaska statute governing expert qualifications applied in a medical malpractice case brought under the Federal Tort Claims Act just as it would in a diversity medical malpractice case).

The plaintiff in *Griffin* was herself a board-certified internist who discussed her symptoms with two colleagues in Glendive, Montana – Dr. Nichols, a board-

certified surgeon and Dr. Lewis, a board-certified OB-GYN. *Id.* at 3  Nine months after moving from Glendive to Helena, Dr. Griffin "was evaluated by several different physicians in Helena, none of whom diagnosed her with cancer." *Id.* at ¶ 4. Dr. Griffin was diagnosed with Stage IV uterine cancer only after undergoing surgical diagnosis in Michigan. *Id.* She sued Dr. Nichols and Dr. Lewis and retained an expert witness, Dr. Beck, who "teaches courses at the University of Utah on oncology and palliative medicine," but does not "perform evaluations or work-ups of patients with abdominal complaints who are not already oncology or palliative patients." *Id.* at ¶ 5. The Montana Supreme Court affirmed the district court's decision to exclude Dr. Beck from testifying based on its prior case law and Mont. Code Ann. § 26-2-601, which "adds to the foundational requirements of M.R. Evid. 702." *Id.* at 9.

Contrary to Plaintiff's contention, Montana law does not require that board certification in a particular specialty is necessary to testify as to the standard of care for someone working in that specialty. When viewed in its entirety, Mont. Code § 26-2-601 is designed to ensure that an expert witness in a medical malpractice case either treats or instructs students as to the condition at issue. The condition at issue here is a cervical spine injury. The Court has reviewed the qualifications and expert reports of the State's expert witnesses and agrees with

9

Plaintiff that Dr. Mikkelsen is not qualified to testify as to Dr. Justad's standard of care.[2]

Dr. Adelberg is certified by the American Board of Neurology and Psychiatry. Although much of his work is devoted to doing evaluations in connection with serving as an expert witness, he also continues his private practice in general neurology and internal medicine. (Doc. 66-3 at 36). Dr. Adelberg is clearly qualified to testify as to Dr. Justad's standard of care. Although neither Dr. Adelberg's expert report nor his December 13, 2018, letter (Doc. 70-2) could be admitted at trial, Dr. Adelberg will be permitted to testify at trial and will testify consistent with his report. The State has met its burden of establishing disputed issues of material fact as to whether Dr. Justad breached her standard of care.

The parties agree that the issue of whether Dr. Justad was an agent of the State can be decided as a matter of law. Having reviewed the documents provided

---

[2] Dr. Mikkelsen is clearly qualified to testify as to the standard of care for the members of Marten's treatment team at the Montana Developmental Center and to issues relating to causation and Marten's need for future care. He characterizes himself as "a specialist in the medical care of individuals with developmental disabilities." (Doc. 70-1 at 6, ¶ 4). This characterization is well supported by his curriculum vitae. He has consulted with the Massachusetts Department of Developmental Services since 1980 and with the MENTOR Network since 1990. He now serves as the Medical Director of the MENTOR Network. (Doc. 66-2 at 58). According to its website, the MENTOR Network provides services similar to those provided at MDC in 36 states. Dr. Mikkelsen has been "hired by the United States Department of Justice on several occasions to evaluate and monitor the care provided at facilities like MDC with committed developmentally disabled individuals." (Doc. 70-1 at 6, ¶ 6).

by the parties, in particular the contract between DPHHS and Dr. Justad (Doc. 44-8), the Court has determined that Dr. Justad was an independent contractor and was not an agent of the State of Montana. *See Kyriss v. State*, 707 P.2d 5, 15 (Mont. 1985)(affirming district court's holding that doctors who contracted with Montana State Prison were independent contractors).

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiff's motion for summary judgment on Count IV of her Complaint (Doc. 67) is DENIED.

Dated this 26th day of April, 2019.

> /s/ Charles C. Lovell
> CHARLES C. LOVELL
> SENIOR UNITED STATES DISTRICT JUDGE