FILED

9/27/2019

Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELLEN MARTEN, as Guardian and Conservator of Glen Marten,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA,<br><br>Defendant. | CV 17–31–H–CCL<br><br>OPINION<br>&<br>ORDER |

On September 9, 2019, the parties filed a joint status report indicating that they have been unable to resolve this case, despite good faith settlement discussions. The parties indicate that a decision by the Court as to some or all of the fully briefed motions pending before the Court will assist in continued settlement discussions. The Court agrees that a decision on Defendant State of Montana's pending motion for summary judgment will assist the parties to resolve their remaining issue and to prepare for trial. As neither party has requested a hearing on that motion, the Court is prepared to rule.

**LEGAL STANDARD**

The parties are familiar with the legal standard applied by this Court in deciding summary judgment motions, and it need not be repeated here.

**STATEMENT OF FACTS[1]**

The following factual statement is drawn in part from the Court's order granting Defendant Gene Haire's motion for summary judgment. (Doc. 107). Glen Marten[2] (Marten) suffers from developmental, cognitive, physical and psychological conditions. He lived at the Montana Developmental Center ("MDC") for approximately fifteen years, starting in 1990 and most recently from February 2009 to November 25, 2014. Marten was involuntarily committed to MDC, a facility for people with serious intellectual disabilities run by the State of Montana Department of Public Health and Human Services ("DPHHS") due to his violent outbursts.

Gene Haire (Haire) began working as the MDC Superintendent in May of 2011 and served in that position until May of 2015, when he retired. MDC housed

---

[1] Because Plaintiff opposes summary judgment, the Court accepts as true all facts for which Plaintiff provides support in the record and draws all reasonable inferences in favor of Plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[2] Plaintiff Ellen Martin is the Guardian and Conservator for her son, Glen Marten. She will be referenced as Plaintiff while her son will be referenced as Marten.

approximately 68 residents while Haire was its superintendent and provided around the clock nursing care to its residents. Haire was responsible for providing guidance and support to staff, including contract staff, regarding treatment standards. Haire had no medical training and was not qualified to intervene in medical decisions.

Haire directly supervised MDC's Clinical Services Director, Polly Peterson (Peterson), who supervised MDC's medical personnel. Peterson was the on-site supervisor for medical staff at MDC, including Dr. Justad[3], who contracted with the State to provide medical services. Peterson is a psychologist, not a medical doctor, and therefore could not determine whether the treatment decisions relating to Marten's medical care were appropriate, whether those decisions were made by Dr. Justad or by the nursing staff. During the relevant time period (the fall of 2014), Dr. Justad was the only physician serving the medical needs of MDC residents. Dr. Justad visited MDC once a week.

Marten suffered a spinal cord injury on September 11, 2014, and showed progressive signs and symptoms of his cervical disc herniation and spinal cord dysfunction from September 11, 2014 to December 3, 2014. During this time, Dr.

---

[3] Dr. Justad and South Hills Internal Medicine Associates (South Hills) were named as defendants in Plaintiff's initial complaint. All claims against them were dismissed on May 15, 2018, pursuant to a stipulation between Plaintiff, Dr. Justad, and South Hills.

3

Justad was Marten's primary treating physician. MDC staff members working with Marten became increasingly concerned about his deteriorating condition through the fall of 2014. In late October of 2014 there was an email exchange between Dr. Justad's office and MDC medical staff in which MDC medical staff recommended that Marten should have an MRI of his entire spine. Peterson and Haire were both aware of that exchange, but did not intervene when Dr. Justad chose not to order the MRI.

MDC medical staff could authorize having a resident taken to the hospital without seeking approval from Peterson or Dr. Justad. Although various members of Marten's medical staff were increasingly concerned about Marten's condition during the fall, the decision to have Marten taken to St. Peter's Hospital was not made until November 25, 2014.

During his stay at St. Peter's, Marten had an MRI, which revealed the need for surgery on his cervical spine. Dr. Lemons, one of Plaintiff's retained experts, opines that MDC medical staff should have properly diagnosed Marten and referred him for surgical intervention soon after his September 11, 2014, fall and no later than the first work week of October. In Dr. Lemons' opinion, Marten suffered severe injury as the result of the delay in diagnosis and referral.

/ / /

**PROCEDURAL HISTORY**

Plaintiff filed her complaint in state court and served Haire in January of 2017; the State and Haire filed their notice of removal in February of 2017. At the preliminary pretrial conference held on May 25, 2017, the Court set trial for May 13, 2019, based on the parties' representation that they could meet the other deadlines set by the Court, including the expert disclosure deadlines. On February 1, 2018, the Court granted the parties' first Joint Motion to Extend Scheduling Order and entered its First Amended Scheduling Order, extending numerous deadlines set in the Preliminary Scheduling Order, including the expert disclosure deadlines. On April 18, 2018, the Court granted the parties' motion to extend the expert witness disclosures and the joint status report and discovery deadlines. The Court set the deadline for Plaintiff's expert disclosure for June 11, 2018, for Defendants' disclosures for July 9, 2018, and for rebuttal disclosures for August 6, 2018. On August 22, 2018, after the expert disclosure deadlines had passed the Court issued a Second Amended Scheduling Order, extending the discovery deadline until October 31, 2018. In that Order, the Court warned the parties that if they could not comply with the deadlines, the Court might need to consider resetting the trial date. On October 1, 2018, the parties jointly moved for an extension of the October 31, 2018, discovery deadline so that the State could

depose three of Plaintiffs' timely disclosed expert witnesses (Dr. Rosen, Dr. Lemons and Dr. Urbach) in November. The Court granted the motion on October 2, 2018.

The State filed its reply brief on its motion for summary judgment on January 14, 2019 and filed a motion *in limine* seeking to exclude certain testimony from Plaintiff's experts on February 8, 2019. The State's reply brief was filed on March 8, 2019. The Court has considered the arguments made in connection with the State's motion *in limine* regarding Plaintiff's experts in considering the State's motion for summary judgment.

The Court granted Haire's motion for summary judgment on April 25, 2019, and denied Plaintiff's motion for summary judgment on April 26, 2019. On April 29, 2019, Plaintiff and Defendant filed a "Joint Motion to Vacate Trial Date"so that counsel could discuss settlement, which motion was granted by the Court.

**DISCUSSION**

The State raises alternative theories as to why it is entitled to summary judgment. Its first theory is premised on the Court's adoption of Plaintiff's argument that Dr. Justad was an agent of the State. The Court will not address that theory, having found as a matter of law that Dr. Justad was an independent contractor.

The State's second theory is premised on its argument that the liability experts retained by Plaintiff are not qualified to testify as to the standard of care for anyone other than Dr. Justad and that any testimony from the experts regarding the standard of care for anyone other than Dr. Justad should be excluded because it was not properly disclosed.

Plaintiff responds that the expert reports submitted by its retained liability experts (Dr. Lemons and Dr. Urbach) were sufficient to put the State on notice that they were prepared to testify regarding the treatment and care that Marten received from all MDC personnel, not just from Dr. Justad. Although the Court takes its "gatekeeper" responsibilities under *Daubert v. Merrell Dow Pharmeceuticals*, 509 U.S. 579 (1993), seriously, it appears to the Court that the State's objections to the qualifications of Dr. Lemons and Dr. Urbach go to the weight of their testimony, rather that its admissibility.

The State is therefore left with its argument that Plaintiff's expert disclosures were inadequate. Given that Dr. Urbach admitted during his deposition that he only intended to provide expert testimony as to Dr. Justad's standard of care, the Court agrees that Dr. Urbach should not be permitted to testify as to the standard of care for any other medical provider at MDC.

/ / /

Dr. Lemons explained during his deposition, which was held on December 11, 2018, that his use of the term "medical staff" in his expert disclosure referred to the members of staff cited in is report whose duties included evaluating and recording their findings about Marten. (Doc. 90-1 at 12, Lemons Depo. 38:8 - 16). The State characterizes Dr. Lemons' deposition testimony as a belated attempt to enlarge the scope of his expert disclosure six months after the disclosure deadline. As outlined above, however, the parties jointly moved to extend the date for expert depositions through November of 2018, and then decided to hold Dr. Lemons' deposition in December of 2018. Given the State's choice to delay deposing Dr. Lemons until after the deadline for filing its summary judgment motion, the Court has determined that it should consider Dr. Lemons' deposition testimony in deciding the pending summary judgment motion.

Plaintiff also argues that she need not present expert testimony to establish that the State was negligent because the State hired Haire and Peterson and charged them with general supervisory responsibilities over Dr. Justad, even though they lacked the education and training to supervise a medical doctor. The State characterizes Plaintiff's claim against the State as a negligent hiring and supervision case and argues that Plaintiff can only prove the State's negligence by providing expert testimony establishing that the State is required to have a medical

doctor supervise the decisions of the medical doctor contracted to provide medical care to MDC residents. The cases cited by the State are not sufficiently similar to this case to support their argument. In this case, Marten was involuntarily committed to a State-run facility under the direction of the State's Department of Public Health and Human Services. Marten presents expert evidence supporting his allegation that he suffered severe injury due to the delay in diagnosing and referring him for medical treatment.

In considering the State's motion for summary judgment, the Court accepts as true Plaintiff's properly supported factual statements and draws all inferences in Plaintiff's favor. Although MDC is not a full-service hospital, it provided around the clock nursing care to its residents. Its Superintendent was responsible for providing guidance and support to staff, including contract staff, regarding treatment standards. MDC's Clinical Services Director was Dr. Justad's on-site supervisor. Marten was one of approximately 68 residents housed at MDC and both the Superintendent and the Clinical Services Director were familiar with Marten's health problems. Marten was at MDC based on an involuntary commitment. He was not free to leave MDC and find someone other than Dr. Justad to treat his medical condition. While the failure by MDC staff to override Dr. Justad's medical judgment concerning Marten's care and treatment was not so

grossly negligent as to constitute a violation of his civil rights, Plaintiff may be able to prove at trial that MDC staff members were negligent.

Plaintiff has met her burden of establishing the existence of genuine issues of material fact. Accordingly,

IT IS HEREBY ORDERED that the State's motion for summary judgment as to Plaintiff's state law claims against it (Doc. 62) is DENIED.

Dated this 27th day of September, 2019.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE