FILED
9/30/2019
Clerk, U.S. District Court
District of Montana
Helena Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| ELLEN MARTEN, as Guardian and Conservator of Glen Marten,<br><br>Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA,<br><br>Defendant. | CV 17–31–H–CCL<br><br>OPINION<br>&<br>ORDER |

Before the Court are six fully briefed motions *in limine*, two filed by Plaintiff Ellen Marten and four filed by Defendant State of Montana. On September 9, 2019, the parties filed a joint status report indicating that they have been unable to resolve this case, despite good faith settlement discussions. The parties indicate that a decision by the Court as to some or all of the fully briefed motions *in limine* pending before the Court will assist in continued settlement discussions. The Court considered the briefing on many of the pending motions *in limine* in the course of denying the parties' cross-motions for summary judgment and is therefore prepared to rule on those motions.

1

## LEGAL STANDARD – MOTIONS *IN LIMINE*

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). This Court "is vested with broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial." *Campbell Industries v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980). Some rulings on evidentiary issues should be deferred until trial, particularly issues involving the balancing of probative value and prejudice, as required by Fed. R. Evid. 403, which is incorporated in Fed. R. Evid. 609. *See United States v. Cook*, 608 F.2d 1175, 1186 (9th Cir.1979) (en banc), cert. denied, 444 U.S. 1034 (1980), overruled on other grounds in *Luce v. United States*, 469 U.S. 38 (1984). As explained by the United States Supreme Court in *Luce*, any pretrial ruling on a motion *in limine* "is subject to change" because new evidence may come in during trial necessitating a change in the ruling. *Luce*, 469 U.S. at 41.

## DISCUSSION

1. <u>Plaintiff's Motion in Limine Regarding Expert Opinions (Doc. 65)</u>.

Plaintiff seeks to prevent Defendant State of Montana from presenting testimony from Dr. Edward J. Mikkelsen and Dr. Michael Adelberg regarding the following subjects: (1) the standard of care applicable to Dr. Jean Justad, an

internist; (2) nursing and physical therapy standards of care; (3) causation; and (4) issues relating to lifecare planning and economic issues.

The Court addressed these issues in deciding Plaintiff's motion for summary judgment. (Doc. 109 at 10). To the extent further clarification is needed, Dr. Adelberg will be allowed to testify as to Dr. Justad's standard of care, should such testimony be necessary. Dr. Mikkelson will not be permitted to testify as to Dr. Justad's standard of care. Both Dr. Mikkelson and Dr. Adelberg will be allowed to testify as to the standard of care for the other individuals in Marten's treatment team at the Montana Developmental Center and to issues relating to causation and Marten's prognosis, future care, and treatment.

2. <u>Defendant's Motion in Limine re: DOJ Report (Doc. 73)</u>.

Defendant seeks to prevent Plaintiff from introducing "the investigative report and associated materials prepared by the Montana Department of Justice ('DOJ') concerning Glen Marten's care during the fall of 2014" on the grounds that "the materials are inadmissible hearsay, contain hearsay within hearsay, and the opinions expressed therein lack foundation and are inadmissible lay and legal opinions that would unfairly prejudice the State." (Doc. 73 at 2).

Plaintiff argues that the report and its contents (DOJ Report) should not be excluded as hearsay because it qualifies as the admission of an opposing party

under Fed. R. Evid. 801(d)(2)(C) or qualifies as factual findings from a legally authorized investigation under Fed. R. Evid. 803(8)(A)(iii). Plaintiff also argues that, to the extent that the report contains opinions, those opinions constitute admissible lay opinions based on a culmination of the findings made during the investigation. Finally, Plaintiff argues that the probative value of the report is not substantially outweighed by the danger of unfair prejudice.

The Court is familiar with the DOJ Report, having previously granted Plaintiff's motion to compel its production. (Doc. 61). The Court has already considered and rejected Plaintiff's argument that the DOJ Report qualifies as a party admission. (Doc. 109 at 5 - 6).

Plaintiff's argument that the DOJ Report qualifies as factual findings from a legally authorized investigation presents a closer question. The public investigatory report exception to the hearsay rule is found in Fed. R. Evid. 803(8)(A)(iii) and excludes "factual findings from a legally authorized investigation" made by a public office from the hearsay rule, even when the person who made those factual findings is not available. In applying this rule, the Court must first determine whether the statements to be admitted are based on factual investigation and "whether the report, or any portion thereof, is sufficiently trustworthy to be admitted." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169 (1988).

4

When Fed. R. Evid. 803(8) was first enacted the "Advisory Committee proposed a nonexclusive list of four factors it thought would be helpful in passing on [the trustworthiness] question: the timeliness of the invetigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation." *Id.* at 167, n. 11.

Fed. R. Evid. 803(8) was amended in 2014 "to clarify that if the proponent has established that the record meets the stated requirements of the exception – prepared by a public office and setting out information as specified in the Rule – then the burden is on the opponent to show that the source of the information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8) advisory committee's note to 2014 amendment.

Defendant concedes that the investigation that led to the DOJ Report was timely, but argues that it does not meet the trustworthiness requirement because the person who compiled the report acknowledged that the DOJ staff conducting the investigation lacked medical expertise, there was no hearing, and the DOJ investigators were motivated to find neglect because certain legislators and the public wanted to shut down the Montana Developmental Center (MDC).

The Court rejects Defendant's argument concerning the motivations of the DOJ staff who conducted the investigation. Although the investigators may have suspected that their report would be used in litigation by Disability Rights Montana (DRM), the entity that initially submitted the complaint about Marten's care, or by certain legislators in support of their efforts to close MDC, there is nothing in the report to indicate that the investigators were trying to support DRM's position in anticipated litigation or any legislator's attempt to close MDC.

There is no question that the Montana Department of Justice was conducting a legally authorized investigation and that the first 61 pages of the "DOJ Report" summarize the documents reviewed and the interviews taken during that investigation. (Doc. 4-29 at 1 - 61). Although the DOJ investigators lack medical expertise, they are presumably trained in both conducting interviews and summarizing records. The Court therefore finds that the first 61 pages of the DOJ report qualify under the public records exception to the hearsay rule.

The next two pages of the report are titled "Analysis and Finding for Report # F1141208 Re: Medical care provided to Glen Marten," signed by Dana Toole, the Children's Justice Bureau Chief for the Montana Department of Justice, and dated June 26, 2015. (Doc. 4-29 at 62 - 63). Ms. Toole concludes that "Mr. Marten's care at MDC during the period prior to his admission to the hospital on

November 25, 2014, constituted 'neglect' because there was a general 'failure to provide services necessary to avoid physical or psychological harm.'" and further concludes that her staff lacked the medical expertise to make a finding regarding any individual potential wrong-doer. (Doc. 4-29 at 63).

After deciding that the "exception to the hearsay rule for public investigatory reports containing 'factual findings,' extends to conclusions and opinions contained in such reports," the Supreme Court noted that it was not addressing the admissibility of a legal conclusion contained in an otherwise admissible report. *Beech Aircraft*, 488 U.S. at 170, n. 13. The Ninth Circuit has addressed this issue in considering the admissibility of a report prepared by the United States Department of Labor, holding that "[p]ure legal conclusions are not admissible as factual findings." *Sullivan v. Dollar Tree Stores, Inc.*, 623 F.3d. 770, 777 (9th Cir. 2010). The "Analysis and Finding" section of the DOJ Report is a legal conclusion and must therefore be excluded.

The Court's analysis of the admissibility of the DOJ Report does not end with Fed. R. Evid. 803(8). The Court must also consider whether its probative value is outweighed by the danger of unfair prejudice. The introduction of the "Analysis and Finding" section of the DOJ Report would be unduly prejudicial to Defendant and would be excluded on that basis, if the Court had not already

determined that it should be excluded. The probative value of the remaining portions of the DOJ Report outweighs the potential prejudice.

3. <u>Plaintiff's Motion in Limine Regarding Glen Marten's Criminal History (Doc. 87)</u>.

Plaintiff seeks to exclude all evidence of Glen Marten's criminal history under Fed. R. Evid. 403 and 404(b), arguing that Defendant's only reason for introducing evidence of Marten's prior assaultive behavior is to demonstrate he is a bad person and prejudice his case. Defendant opposes Plaintiff's motion, arguing that evidence of Marten's prior conduct is not offered to demonstrate his bad character but to explain what MDC staff knew about his history and how that knowledge affected their treatment decisions. Defendant also seeks to introduce evidence of Marten's post-injury violence and aggression to explain the reasons for his current placement and why it is preferable to the alternative placement proposed by Plaintiff's experts. The Court sees no reason why Defendant should need to introduce evidence concerning Marten's criminal convictions and grants Plaintiff's motion as to prior convictions.

Defendant, however, must be permitted to present evidence concerning Marten's developmental, cognitive, physical, and psychological conditions, which may require evidence concerning the behavior that led to his placement at MDC and during his stays there. The Court has determined that a ruling on this issue,

determined that it should be excluded. The probative value of the remaining portions of the DOJ Report outweighs the potential prejudice.

3. <u>Plaintiff's Motion in Limine Regarding Glen Marten's Criminal History (Doc. 87)</u>.

Plaintiff seeks to exclude all evidence of Glen Marten's criminal history under Fed. R. Evid. 403 and 404(b), arguing that Defendant's only reason for introducing evidence of Marten's prior assaultive behavior is to demonstrate he is a bad person and prejudice his case. Defendant opposes Plaintiff's motion, arguing that evidence of Marten's prior conduct is not offered to demonstrate his bad character but to explain what MDC staff knew about his history and how that knowledge affected their treatment decisions. Defendant also seeks to introduce evidence of Marten's post-injury violence and aggression to explain the reasons for his current placement and why it is preferable to the alternative placement proposed by Plaintiff's experts. The Court sees no reason why Defendant should need to introduce evidence concerning Marten's criminal convictions and grants Plaintiff's motion as to prior convictions.

Defendant, however, must be permitted to present evidence concerning Marten's developmental, cognitive, physical, and psychological conditions, which may require evidence concerning the behavior that led to his placement at MDC and during his stays there. The Court has determined that a ruling on this issue,

which involves the balancing of probative value and prejudice, should be deferred until trial.

   4.   Defendant's Motion *in Limine* Re: Plaintiff's Experts (Doc. 89).

Defendant seeks to prevent testimony from Plaintiff's experts that MDC employees violated standards of care. The Court addressed this issue as to Dr. Lemmons and Dr. Urbach in deciding its order denying Defendant's motion for summary judgment. Dr. Lemons will be permitted to testify regarding the standard of care for MDC staff. Dr. Urbach will not be permitted to testify regarding the standard of care for MDC staff.

Defendant asks the Court to exclude the liability opinion expressed by Dr. Rosen in his "rebuttal" expert disclosure because Dr. Rosen was initially disclosed solely as a damages expert. The Court has reviewed Dr. Rosen's rebuttal disclosure report, in which he offers two "liability" opinions. The first states that in October of 2014, Marten "was observed to be suffering from an acute physical decline, unique and distinct from his previous problems. This decline was never recognized or evaluated by his primary physician, nor was he referred to any others for adequate assessment." (Doc. 90-4 at 14). Later in the report, Dr. Rosen writes that Marten's "life-long care needs . . . could have been prevented, if a timely, appropriate evaluation had taken place." (Doc. 90-4 at 18). Plaintiff's

9

theory from the beginning of this case has been that the delay in diagnosis and treatment caused Plaintiff's injuries. These are not proper rebuttal opinions and should be excluded.

Defendant seeks to exclude testimony from Steven Yuhas, a life care planner, based on Marten's placement in one of four out-of-state facilities without any evidence that such placement is medically necessary or that Marten would be accepted in such a facility. Defendant also argues that Mr. Yuhas's testimony should be excluded based on his belated submission of a supplemental expert report.

Given the time that the parties have spent working on settlement negotiations, it does not seem to the Court that Defendant was unduly prejudiced by the belated submission of the supplemental report. The Court is not convinced at this juncture that Plaintiff will be able to show that placement in one of the four out-of-state facilities is medically necessary or that Marten would be accepted. Given that Mr. Yuhas lacks the necessary qualifications to testify to those issues, he will not be permitted to include the cost of those facilities in his testimony regarding Marten's life-care plan.

5. Defendant's Motion *in limine* re: Damages (Doc. 93).

Defendant seeks to prevent Plaintiff from presenting any evidence of the

amount the State has already paid as a measure of damages for past medical expenses and to prohibit Plaintiff from presenting any evidence regarding future damages for medically necessary care. In the alternative, Defendant asks the Court to permit the State to present evidence as to the amount it has already paid and will pay in the future for Marten's medically necessary care through its Medicaid and Medicaid Waiver programs.

The issue before the Court is whether Plaintiff Ellen Marten, the Guardian and Conservator for her son, Glen Marten, should be allowed to present evidence in support of her compensatory damage claim about past medical expenses that the State of Montana has already paid and about future medical expenses that will be paid by the State, through its Medicaid and Medicaid Waiver programs. The complexity in this case arises because the State of Montana is the Defendant charged with causing Marten's injuries and is also the party responsible for paying his medical bills, not because it is has assumed liability for his injuries but because the State made a voluntary decision to participate in the Medicaid program. Plaintiff's compensatory damages should not include either past medical expenses paid by Defendant or future medical expenses to be paid by Defendant.

/ / /

/ / /

6. Defendant's Motion *in Limine* (Doc. 91).

   A. Other Acts Evidence

Defendant asks the Court to categorically exclude evidence of other incidents of alleged abuse and neglect at MDC without first applying the four-part test set forth by the Ninth Circuit. Rather than identifying a specific incident or incidents that she intends to bring up at trial, Plaintiff argues that the "other act" evidence is necessary to show that the State and Haire had actual notice that staff supervision was woefully inadequate. The issue in this case in not whether MDC staff were adequately supervised – it is about whether MDC personnel should have done something more than they did to ensure that Marten received necessary medical care. Plaintiff may be attempting to prove the State's liability by proving that the State employee charged with supervising Dr. Justad should have known not to trust her medical judgment based on a prior failure by Dr. Justad to properly diagnose a patient. If that is true, Plaintiff must provide the Court and Defendant with notice of the specific incident or incidents upon which she intends to rely. Once such notice is provided, the Court will consider whether to allow the specific evidence. This portion of Defendant's motion *in limine* is denied, with leave to refile, once Plaintiff has identified the specific evidence of Dr. Justad's prior negligence *vis-a-vis* a patient at MDC.

B.  March 23, 2015, Notice of Violations and Order

Defendant seeks to prohibit Plaintiff from introducing the "Notice of Violations and Order" issued by Roy Kemp, Administrator of the Division of Quality Assurance for the Montana Department of Public Health and Human Services" on March 23, 2015. The Court is familiar with this document, having reviewed it in deciding various motions for summary judgment filed by the current parties and by Defendant Gene Haire. It is clear from the final page of the "Notice of Violations and Order" that it was not a final order and that MDC had not had the opportunity to defend itself from the charges before the order was issued. (Doc. 53-27 at 6). While the Court agrees with Plaintiff that Defendant has muddied the waters as to the issue whether this document is protected from disclosure under Mont. Code Ann. § 50-16-205 by denying that MDC was a hospital, the Court agrees with Defendant that its probative value is outweighed by the risk of unfair prejudice. This portion of Defendant's motion *in limine* is granted.

C.  Evidence of MDC's Closure

Although it is not clear to the Court that any potential juror will be unaware of the events that led to the closure of MDC, the Court agrees that evidence that the legislature chose to close MDC is not admissible in this case.

D. Evidence of Dr. Justad's Settlement

Plaintiff argues that she should be allowed to present evidence of Dr. Justad's settlement if Defendant is permitted to seek to assign a percentage of fault to her. Plaintiff cites no authority for this position. Defendant, also without citing authority, argues that the settlement issue is only relevant to legal issues to be decided by the Court post-verdict and is not relevant to any issue to be decided by the jury. Based on its reading of the relevant Montana statute, Mont. Code. Ann. § 27-1-703 (2019), the Court agrees with Defendant's position. Neither party will be permitted to present evidence relating to Dr. Justad's settlement.

E. Evidence that Dr. Justad was a State Agent

The Court has determined as a matter of law that Dr. Justad was an independent contractor and not an agent of the State of Montana. This portion of Defendant's motion *in limine* is therefore granted.

F. Lay Opinions from MDC staff members.

MDC staff members will be permitted to provide lay opinions at trial on behalf of either party, provided the party seeking to introduce such evidence lays the proper foundation, as required by Fed. R. Evid. 701. This portion of Defendant's motion *in limine* is denied.

///

G. Denise White's Lay Opinions and Hearsay Concerning Gene Haire

Defendant seeks to prevent a specific former MDC employee from providing a lay opinion about Gene Haire's competence on the grounds that her opinion was based on information from other MDC employees and not on personal knowledge. This portion of Defendant's motion *in limine* is granted.

H. Suggestion that DOJ found neglect as to any individual.

The Court resolved this issue by holding that pages 61 and 62 of the DOJ report should not be admitted, effectively granting this portion of Defendant's motion *in limine*.

I. Allegations of Failure to Train or Supervise

Defendant seeks to prevent Plaintiff from introducing allegations of failure to train or supervise MDC staff because Plaintiff's response to discovery was that she would defer to an expert on that issue and she then failed to properly disclose expert testimony on that issue. Defendant also argues that Plaintiff should not be permitted to raise a separate claim for negligent hiring, training, retention and supervision when Defendant has admitted that it is vicariously liable for any negligence on the part of State employees charged with caring for Marten, citing *Patrick v. FedEx Grounds Package Sys., Inc.*, 2010 U.S. Dist. LEXIS 47729 at \*\* 5 - 7 (D. Mont., Apr. 21, 2010).

The Court agrees with Magistrate Judge Lynch's reasoning in *Patrick* that in most cases it would be redundant to allow a plaintiff to proceed against an employer on both a *respondeat superior* and a negligent hiring and supervision case. Therefore the Court grants this portion of Defendant's motion *in limine* as to allegations of negligent training and supervision of State employees.

Dr. Justad, however, was not a state employee. Plaintiff may therefore be able to prove Defendant's liability by proving that a State employee charged with supervising Dr. Justad should have known not to rely on her medical judgment concerning Marten's care. Such a theory clearly requires expert testimony. As noted above, the Court has determined that Dr. Lemons should be able to testify, even though his expert report as to this issue was arguably inadequate.

J.   Allegations of MDC Duty to Investigate

The Court agrees with Defendant that DPHHS had no statutory obligation to investigate DRM's complaint about Marten's care or the care received by any other patient at MDC after the Montana legislature assigned that duty to the DOJ. Given that Plaintiff is being permitted to introduce all but two pages of the DOJ report, there is no reason for Plaintiff to present evidence about the lack of an internal investigation. Indeed, evidence of such an investigation would likely be inadmissible. This portion of Defendant's motion *in limine* is therefore granted.

K.  Evidence of Marten's Move to Different Room

Marten's parents visited him on November 24, 2014, the day before he was sent to the emergency room. Their impressions of his condition and the condition of the room to which he had been transferred and what they did in response are relevant. This portion of Defendant's motion *in limine* is denied.

L.  Evidence of Christy Modrow's Returning Marten's Personal Belongings to Great Falls

Plaintiff seeks to introduce her testimony about comments made by Christy Modrow when she brought Marten's personal items, including a bowling ball and golf clubs, to Great Falls after Marten left the hospital. The Court agrees with Defendant that these comments are not relevant to the issue to be decided by the jury and therefore grants this portion of Defendant's motion *in limine*.

M.  Testimony about "Loved Ones" Standard of Care

While the so-called "loved one" standard of care in this case arguably applies to Plaintiff, who is Glen Marten's mother, she cannot impose that standard on Defendant. The Court agrees that Plaintiff's questions to state employees regarding what they would have done for their spouse, parent, or child are objectionable and will sustain any objection to such questions during depositions or posed at trial.

/ / /

17

**ORDER**

1. Plaintiff's Motion in Limine Regarding Expert Opinions (Doc. 65) is DENIED.

2. Defendant's Motion in Limine re: DOJ Report (Doc. 73) is DENIED as to all but pages 61 and 62 of the report.

3. Plaintiff's Motion in Limine Regarding Glen Marten's Criminal History (Doc. 87) is GRANTED to the extent that Defendant seeks to introduce evidence of Marten's prior convictions and DENIED to the extent Defendant seeks to introduce evidence concerning Marten past behavior necessary to shed light on MDC staff's reaction to his requests for medical care. Plaintiff's objections to the introduction of specific evidence will be decided at trial.

4. Defendant's Motion *in Limine* Re: Plaintiff's Experts (Doc. 89) is GRANTED in part and DENIED in part as follows: Dr. Lemons will be permitted to testify regarding the standard of care for MDC staff; Dr. Urbach will not be permitted to testify regarding the standard of care for MDC staff; Dr. Rosen will not be permitted to provide the liability opinions first disclosed in his rebuttal report; and Steven Yuhas will not be permitted to include the cost of the four out-of-state facilities in Marten's life-care plan.

5. Defendant's Motion *in Limine* Re: Damages (Doc. 93) is GRANTED.

6. Defendant's Motion *in Limine* (Doc. 91) is GRANTED in part and DENIED in part as follows.

A. Defendant's motion to categorically exclude all "other acts" evidence is DENIED with leave to refile, to the extent Plaintiff can identify specific evidence of Dr. Justad's prior negligence *vis-a-vis* a patient at MDC.

B. Defendant's motion to exclude the March 23, 2015, Notice of Violations and Order is GRANTED.

C. Defendant's motion to exclude evidence of MDC's closure is GRANTED.

D. Defendant's motion to exclude evidence of Dr. Justad's settlement is GRANTED.

E. Defendant's motion to exclude evidence that Dr. Justad was an agent of the State of Montana is GRANTED.

F. Defendant's motion to exclude lay opinions from MDC staff members is DENIED to the extent Plaintiff lays the proper foundation for such testimony. The Court will rule on specific objections at trial.

G. Defendant's motion to exclude Denise White's lay opinion concerning Gene Haire is GRANTED.

///

H. Defendant's motion to exclude evidence that the DOJ found any individual state employee negligent in the DOJ Report is GRANTED.

I. Defendant's motion to exclude allegations of failure to train or supervise is GRANTED as to such evidence directed at failure to train or supervise state employees but DENIED as to failure to supervise Dr. Justad.

J. Defendant's motion to exclude allegations or evidence concerning the lack of an internal MDC investigation is GRANTED.

K. Defendant's motion to exclude testimony about Marten's move to a different room is DENIED.

L. Defendant's motion to exclude evidence of comments made by Christy Modrow when she returned Marten's personal belongings is GRANTED.

M. Defendant's motion to exclude evidence of the "loved one" standard of care is GRANTED.

Dated this 30th day of September, 2019.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT